Our second case for this morning is In Re. Charles E. Taylor II, debtor, Charles Taylor v. Patricia Caiarelli. Mr. Banich? Good morning, Your Honors. Good morning. Ms. Jansen. May it please the Court? My name is Terrence Banich, and along with my colleague, Mr. Doyle, at Council Table, we represent the appellant, Charles Taylor. I have reserved five minutes of rebuttal. The judgment of the District Court should be reversed because it was the result of multiple errors of law. Contrary to the District Court's conclusion, this Court should rule that what we refer to as the ratification order entered by the Washington State Court was an impermissible collateral attack on the order of dismissal entered by the Bankruptcy Court. I don't understand that, to be honest, because it seems to me the State Court is minding its own business, in a sense, with respect to this estate, and it has created an input that could be taken back to the Bankruptcy Court for a motion under the bankruptcy equivalent of Rule 60B, which is Bankruptcy Rule 9024, and the Bankruptcy Court will take it or leave it or say it's too late or do with it what it thinks appropriate for the bankruptcy. So I don't see why it does anything but, for whatever State Court purposes there may be, indicate whether this assignment to Chiarelli from Longyear is effective. I think we could break that apart into two pieces. It's true that if this Court were to affirm, and there was a subsequent proceeding under Rule 60B, and the appellees returned to State Court and got the ratification order re-entered, which they'd have to do since it was vacated at some point, and present that to the bankruptcy judge as a reason to vacate the order of dismissal under Rule 60B, the bankruptcy judge might find under Rule 60B standards that it still doesn't work. It seems to me very likely, actually, given how difficult it is to get Rule 60B relief. I think this order is quite some steps down the chain from anything changing. Well, Your Honor, I wish to address myself, though, to the collateral attack point. I'm saying I don't think it is one. I understand, and I want to explain at least to address your question as to why we're advocating that it is. Judge Rosner has a question. Judge Rosner is going crazy. Here, the ratification motion may have strengthened the argument that Chiarelli could make in a Rule 60B motion, but would that be enough to constitute an action to collect, recover, or offset any discharged debt of the debtor? If we're now turning to the discharge injunction issue. Just answer the question. Yes, I think it was, absolutely, because under the broad interpretation of the discharge injunction statute, which the authorities we cited in our briefs definitely support, and there is an absence on the appellee side of any sort of contrary authority, this is intended to be a broad injunction, and the first step, the act that's challenged, does not have to be the final act of collection. It can merely set in motion a chain of events which leads to the collection of the judgment in persona. Okay, well, here's what I may not get. It seems to me that the probate court decision on the motion to ratify didn't alter the legal relationships of the parties at all, but merely recognized the legal status of the assignment that she already possessed during the bankruptcy court proceedings. So, I don't understand at all how that can be considered an action to collect on the debt when the probate court explicitly clarified that its decision didn't change the duties and obligations of the Tedra judgment as they pertain to Taylor. I'm not getting it. I'd be pleased to try to explicate it a little. The discharge injunction statute, the issue in this case is how broad is it? Is it broad enough to cover a first step like that, that on its face doesn't really seem to seek to collect a judgment? If it's a first step, I think Judge Rovner is trying to push you back one step earlier and say if the assignment was there and some judges were saying, gee, you know, we don't really know if this was really good enough to assign. Now the probate court has said, yes, it was. And we have just these casual things, you know, letters from the judges that don't look like formal court judgments to me. It's just speculation. And so now we know actually at step zero that it was. And just what the bankruptcy court had in front of it was what you see is what you get. Well, let's not forget that that was a factual challenge to Chiarelli's standing on a motion to dismiss, which under this court's decision in Apex Digital is inherently an evidentiary proceeding. Both sides submitted evidence, including the judgment assignment, the letter from Judge Rogers, which, yes, it wasn't an order because he wrote that letter after the automatic stay became effective. But we submitted it doesn't really matter that it wasn't a letter, rather that it wasn't an order, because from the bankruptcy court's perspective, it was evidence. It was documentary evidence that the judge, and apparently with the consent of Ms. Chiarelli, was competent to consider as what the evidentiary force of the judgment assignment was. I don't know that it really is evidence, actually. It's an extrajudicial act by a judge, as you say, who has no jurisdiction at the moment because of the automatic stay. And he could have written an op-ed. Would that have been evidence, too? Well, let's return to what happened before the bankruptcy court. I think what's done is done. That was presented and accepted as evidence without objection from anybody. I think everybody was interested in discussing what the Rogers letter meant. And I think if you were to review the record, the transcript of the proceedings, Chiarelli thought that the Rogers letter actually helped her establish that there wasn't really anything to worry about with regard to the judgment assignment. I think it's too late at this point in the proceeding to say, well, that shouldn't have been admitted as evidence. It was certainly considered as evidence, along with also, don't forget, the record of the proceedings before the Washington State Court where Judge Rogers, who presided over the trial, made it clear to Ms. Chiarelli and her lawyers three times that it was inappropriate for her to keep asking to be the judgment creditor and that she would not in any set of circumstances be the judgment creditor. And the judgment assignment was the reaction to that. And the only reason Judge Rogers never got a chance to finally decide what the, I believe the words were, several steps were skipped in the execution of the assignment, he never got to rule on what those were or whether they were fixed because the automatic stay intervened. But it's not our business to tell the California courts how to handle, sorry, Washington State courts, whatever, any courts, the Washington State courts how to handle these assignments. I want to go back to my big problem, which is just this is so many steps away from collection or recovery or offset, but let's just call it all collection. And the standards for 60B-9024 relief are so stringent, it strikes me as a hypothetical dispute. Well, certainly the collateral, we would submit, and I understand your Honor's skepticism about the collateral attack analysis, but let's boil it down to its most fundamental. The bankruptcy court ruled first just because that was the temporal course of events. The bankruptcy court, for better or for worse, looked at the judgment assignment, the Rogers letter, and the record of the proceedings before the Washington State court and ruled the judgment assignment is insufficient to confer standing on Ms. Chiarelli. That was reduced to the dismissal order. All right, we know that. All right, right. So that order was not appealed and became final. Then they went back to the state court and got a different judge, a court commissioner, to rule, No, the judgment assignment is actually valid. All the concerns in the Rogers letter have been addressed. Nothing to worry about. It was valid from the beginning. The fact is, under the collateral attack doctrine authorities that we cited, basically you can't have a state court judge just undermine a judgment from a federal judge. Sure you can. Sure. It happens all the time. I mean, you know, this is just a transfer of property, basically, and transfers of property happen once the automatic stay is no longer a factor. And this was, in fact, wasn't even a transfer. It was an official judicial ruling about the effect of a purported transfer that had already happened. So it's very difficult to see how this ratification order upends anything the bankruptcy court did. It only upends it if the bankruptcy court itself decides that perhaps this requires reopening of the case. There would be argument about that. It might not meet, you know, I don't know what subsection of 60B we'd be talking about. It's not mistake. It's not new facts. It's not anything. Yeah, it's entirely unclear that even if this court were to affirm, for whatever reason, and a 60B motion were to follow, that might still be unsuccessful for the reasons your honors have noted. The fact is that, you know, we should also talk about, it seems to me, that why are we, why is Rule 60B even an issue in this case? It's because you have to wonder why, when the bankruptcy case was filed and Ms. Chiarelli and her lawyers knew they had possession of the Rogers letter, why they didn't take advantage of certain procedural, routine procedural steps they could have taken to go back to the state court, get the automatic stay modified, and work things out with Judge Rogers to make sure that if those defects he noted in his letter could be fixed and get an extension of time to object to dischargeability of the debt, which can be done. And Judge Castling ruled on the record that he grants those motions routinely and usually without a hearing. But what happened here instead is they decided to forge ahead with their standing sort of up in the air, whether the Rogers letter is an order or not, it clearly communicated to the people who received it that there might be a problem with the judgment assignment. So the one thing that Rule 60B, and I realize this is not an appeal from an order granting or denying Rule 60B relief, but it's not designed and it's not intended to save litigants from their strategic decisions that prove to be a problem. Clearly, but that could be resolved in 60B. If it's under the newly discovered evidence branch, you've got to show reasonable diligence, and you've just given us a preview of what your argument would be on the reasonable diligence point. Yes. I see that. And the Rule 60B motion itself would be an action that was designed to lead to a collection of the debt, but it is an action that is allowed. In the backups. Certainly. So, yeah. Sir, I guess the, I see I'm cutting into my rebuttal time. Yeah, if you would like to please give a brief response. Yes, of course. I guess the point about 60B and collateral attack is that there is no authority that we could find, that the district court cited, that the appellees have cited, that allows anyone in any context, bankruptcy or otherwise, to mount an impermissible collateral attack. The 60B part would not be a collateral attack. That's part of the same case. The only thing that you make a collateral argument about is the Washington State court proceedings. Right, and clearly there is a collateral. They have some legal effect wholly apart from whatever happens in the bankruptcy. Yes, and clearly there is a collateral attack doctrine that this court and others have recognized. But I guess our argument, to be boiled down to this, is you cannot collaterally attack impermissibly in a state court proceeding or in even another federal court. Right. And use that. That general principle is certainly true. Did you rave that in the district court as is argued? Did you rave that? No, Your Honor. In our reply brief we set out, with references to the record, each time we argued that the ratification order impermissibly collaterally attacked the dismissal order. I'm not sure I quite understand the appellee's argument about that because you really can't have a collateral attack argument without reference to two orders, the later order that's alleged to undermine the earlier order. That was clearly the focus of the, at least part of the bankruptcy court's focus. It was part of Judge Chang's focus, in his opinion. And so it seems to me to be not supported by the record, the argument that we weighed in. Thank you. I'd like to reserve the balance of my time. Okay, then. We'll be fine. Ms. Jansen. Good morning. May it please the Court, my name is Kim Jansen. I'm arguing today on behalf of the appellees Madeline Gauthier and Charles Kimbrough. I'm joined by my counsel, Matt Henderson. May it please the Court, and Mr. Bannich. Was there any purpose to this ratification order other than facilitating the ultimate collection of a debt from Mr. Taylor? I don't know that there was any purpose of it other than to clarify who actually owns this judgment and who would be able to. Correct. Well, as you indicated, hopefully somewhere down the line, I suppose the intermediate stage is to challenge whether the debt, in fact, is discharged. I don't think there's ever been any intent to attempt to collect that debt so long as it remains a discharged debt. Well, at the moment, it's a discharged debt. Absolutely, and for the moment, nobody's trying to collect it. What they're trying to do, what they hope to do, is to go back, go on a 6CB, as you indicated, that it will be an uphill battle, of course, but persuade the bankruptcy judge to reconsider the order finding that she failed to adequately establish standing, reopen the adversary proceeding as part of that proceeding, hopefully persuade the judge to find that the debt is non-dischargeable, and if they were to prevail at each step along that route and ultimately obtain a finding that the debt was not dischargeable, then and only then would they ever attempt to collect or enforce this judgment. So I don't understand why she can create standing for herself at this late stage of the proceeding. Standing's the kind of thing that you should have at the outset of the proceeding. The bankruptcy court makes a factual finding that she hasn't carried her burden to establish standing. You know, coming along years later and manipulating various things in any kind of court, state court, a federal court, strikes me as a very irregular way to run things. I don't necessarily disagree with that analysis. As you indicated, it will be an uphill battle to prevail on a 6CB motion challenging the standing finding. At this stage, they haven't challenged the determination with respect to standing. At this point, they have only sought to clarify the status of the judgment assignment, which are two distinct rulings. The dismissal order adjudicated the question of whether or not she had met her burden of establishing standing. The ratification order, as we've been referring to it, adjudicated the question of whether or not that judgment assignment was, in fact, valid from the get-go. If the result of the proposed settlement would be to vacate the contempt finding and eliminate the compensatory damages judgment, what would be left for this court to resolve that would be properly before us? I'm sorry, can you repeat that? Yeah. What will be left for us? If, in fact, there had been a settlement, if everybody had agreed to pay the damages and if everybody had agreed to ask Judge Kasling to vacate the contempt, then I don't know that there would necessarily be any issue remaining. The problem with their argument in terms of the mootness argument is that there wasn't, in fact, a settlement. They've acknowledged multiple times that the insurance company had no authority to settle without consent of Ms. Gauthier and Mr. Kimbrough. Well, don't we still need to address whether the court properly refused to dismiss the appeal as moot? Sure. Based on the settlement offer by the malpractice insurers? Isn't that out there somewhere? I certainly think it's appropriate to address the jurisdictional point. I think we always have to. But I don't think that settlement offer rendered anything moot because it was never an offer of complete relief,  because in order for a settlement offer to render an appeal moot or to render any case moot, it has to be an offer of complete relief. And offering to accept a portion of the damages is not an offer of complete relief. It's an offer of the relief that they would be satisfied with. It was obviously not relief that my clients were satisfied with. There's no question, is there or is there, that the money is somewhere? The money? The money for the young man? Yeah. I don't know where the money is or who has it or if somebody can recover it. Wow. Counsel, it appeared to me that there seemed to be two races going on, one race to the state of Washington with regard to the ratification and the other race through bankruptcy. Why was the ratification issue not resolved prior to initiating the adversary proceeding? And relatedly, why didn't your client seek to go to bankruptcy court instead and simply have the stay or injunction lifted there so that she wouldn't trip up on potentially violating the injunction? Sure. As far as why it wasn't completed is as you recognize, because the stay was in place. So once they obtained the judgment assignment, then Mr. Taylor filed for bankruptcy. There was nothing more they could do. Well, there was something they could do. People go to the bankruptcy court all the time and ask that the automatic stay be lifted for a purpose. And I can't tell you why they did not do that. The question came up sort of on the eve of the argument on the motion to dismiss the adversary proceeding where Mr. Taylor came in as an exhibit to a response or a reply in support of a motion to strike some evidence in opposition to the motion to dismiss that he came forward with Judge Rogers' letter. And that was the first time the validity of the assignment became at issue within the bankruptcy proceeding. I think, again, I was not involved until this appeal in the district court and then here. So I can only speculate as to the strategies and the processes of why decisions were made below that were made. But you're saying that she wasn't asked to provide a solid legal foundation for the assignment until the 11th hour. Correct. So I think the distinctions between the dismissal order, of course, and the ratification motion and ratification order, I think this court has already recognized thoroughly why that presents a problem for the collateral attack argument on the merits. I think there's also the question of what relief they're seeking in terms of a finding that this is an improper collateral attack. If they're asking this court to declare the Washington State court's order void, I think that falls securely within the Anti-Injunction Act, as we argued in our brief. If they're simply seeking an advisory opinion on that, that's just not the sort of thing that this court normally does. Well, they're asking for affirmance of the contempt judgment entered by the bankruptcy court. That's a concrete thing one could do. They say, well, if we think it's moot because of the settlement, we could simply just vacate with instructions to dismiss the whole thing. As far as the contempt judgment, now that in the bankruptcy court was never predicated upon this collateral attack argument. That was predicated on their separate, related, of course, but separate argument that there was a violation of the discharge charge injunction. Again, for the reasons that have already been discussed, there was no attempt here to collect, to enforce, to set off the judgment. All they sought was this clarification on who owns this judgment. It doesn't affect Mr. Taylor's rights. There's a judgment against him, and whether or not he's going to ever be called upon to satisfy that judgment is a question for another day. But the ratification motion, the ratification order had nothing to do with it. Right, so the bankruptcy judge, I mean, I'm just looking at the district court's actual judgment, which is a good place to start. Absolutely. And what he just finds is that the bankruptcy judge was mistaken to find that there was a violation of the discharge injunction, the plan, and so he reverses the contempt and the damages. And as I understand it, that's what we're being asked to review. Correct. And I think Judge Cheng's ruling on that was very well analyzed, very well discussed, and right on point because under the discharge injunction statute, you have to meet three elements before it's a violation. It has to collect, recover, or offset a discharge debt as a personal liability of the debtor. And the ratification motion, the ratification order, didn't seek to do any of those things. It didn't seek to collect anything. It wasn't seeking collection of a discharge debt. It was part of a long game strategy to try and overturn the finding that the debt was discharged. But, of course, just to play the devil's advocate, the critical finding, it seems, of the bankruptcy court is that she had no standing because it wasn't really her, you know, the assignment was ineffective. There's this letter, and that does play a role. So if you go right to the heart of that finding, maybe the bankruptcy court would look at it and say, gee, as a matter of equity, which is what Rule 60B is all about in 9024, I really should reopen this and find that this is perhaps a non-dischargeable debt. And certainly I think that's the hope that my clients have and that their client has it, is that the bankruptcy judge will be persuaded to reopen that. He has not thus far. But what I'm saying is that maybe they're right that it's a collateral attack on the judgment. If it's so core to the judgment of discharge, then how can you unravel that without collaterally attacking it? And I appreciate that you asked that question because that was one of the points I wanted to clarify is that the bankruptcy judge, when he dismissed the adversary proceeding and found that she had failed to meet her burden on standing, he never made a finding that this judgment assignment was invalid, that it failed to comply with certain steps as intimated in Judge Rogers' letter. But why would he make a finding if nobody with standing is challenging it? As I understood his ruling, what he said is that this letter from Judge Rogers raises questions about the validity of the assignment. Because the burden of proof rested with Ms. Chiarelli and because these questions are there, Judge Castling felt that, you know what, you haven't met your burden. In fact, that's what Mr. Taylor's counsel argued. They, in fact, argued that the assignment itself was a red herring, that this was really just a question of the burden of proof, and had she adequately proven that she had standing, that she was holding on to a valid assignment. And Judge Castling obviously determined that she hadn't met that burden of proof, but nobody ever litigated. You'll note in the briefs below in the bankruptcy court, there's no argument about what are these steps that you have to comply with to have a valid judgment under Washington state bankruptcy law. That's not argued. He didn't make a decision on that. He simply said, you know what, Judge Rogers' letter could fairly be read as raising some questions about that. And based on that, I'm going to find that she has not met her burden of proof as to standing. Obviously, her hope is to come back and say, okay, well, we've gotten the Washington court to clarify that. Maybe Judge Castling will find that that was then an error and that it should be overturned. But as everybody's acknowledged, as opposing counsel has acknowledged, this is a maybe. This is a possibility down the line. For it to be a collateral attack, it would have to, as they phrase it in their briefs, inevitably overturn the bankruptcy court's decision. And there's nothing inevitable about anything here. This question might be better asked of Mr. Panitch, but would the settlement proposal impact at all the determination by the court that the probate decision was void ab initio? The settlement? Proposal. Would it impact? Oh, the determination? Yes. As they ultimately brought it around and the certified question back down to the bankruptcy judge, they sought to vacate his entire judgment, which would have included his finding that the ratification order was void ab initio. So vacating that would eliminate that. It wouldn't directly, although it would certainly provide the basis for in the Washington court, after the ratification order was entered and after the challenge was brought in the contempt motion in the bankruptcy case, the Washington court vacated its ratification order subject to the findings on the discharge injunction. Can I ask one other question? Certainly. Counsel, with regard to this proposed settlement from Twin Cities, was that subject to agreement or approval by the attorney and the client, or could that have been settled within the policy without? It could not have been settled without consent of Ms. Gauthier and Mr. Kimbrough. They conceded that in their opening brief. They conceded it in the district court, and, of course, the policy itself is at D32 Exhibit 4, and it's very clear that consent was required. All right. Thank you. Thank you. All right. Thank you very much. Anything further, Mr. Bench? If I might, I'd like to begin with the mootness argument. There was the question from the panel, what would be left for this court to do? Nothing is the answer. And the reason is because mootness in this context has to be looked at through the prism of what was going on in the district court, and that was a bankruptcy appeal where the parties were Mr. Taylor, Ms. Chiarelli, and the lawyers. Well, but this is the way I was viewing it, and I was viewing it that, you know, Gauthier and Chiarelli both opposed the settlement, and that wouldn't alter the finding that the Washington court's judgment was void ab initio, and so all the issues before us would not be resolved. Well, Your Honor, what was Chiarelli, when they were appellants, what were they asking the district court to do? What was their ultimate relief? They wanted the contempt judgment, the contempt order, and the damages order, which all merged into the judgment, all vacated. It's precisely what Taylor offered to do. In fact, we went down to the bankruptcy court and we said to the judge, would you vacate all this pursuant to a motion? And he said, yes, I would do that. But was everybody involved in this settlement? Twin City had the authority to, even though the policy says they require consent, it does say that their policyholders can't unreasonably withhold consent. Yeah, but that's a common term in insurance policies. It doesn't mean you don't have to go get the consent. But I think what we're doing is we're drifting into an insured versus insurer dispute, which is not what was before the district court. The only issue before the district court is what is to become of the contempt judgment, which we secured in the bankruptcy court, and we said, okay, we're ready to go vacate it. We're going to vacate the order that says the ratification order was void. We're going to do absolutely everything that the prayer for relief in the appellee's then appellant's brief asked Judge Chang to do. And under this court's precedence, they can't keep fighting once we've agreed to give them everything they want. But they say you have not, in fact, given them everything that they want. And they've been objecting from the start. Well, right, because they view this in terms of the larger dispute. And mootness is we're talking about one district court's Article III case or controversy, not talking about the larger dispute between these parties in the state court and even proceedings that might happen later in the bankruptcy court. We're only talking about the contempt judgment and those two orders, which they appealed and we agreed to vacate. From a Smith v. Greystone Alliance perspective, that was it. That killed the case or controversy as soon as we agreed to vacate all that stuff. And it doesn't matter from our perspective who was paying the judgment. We agreed to vacate the orders they wanted vacated, which is all Judge Chang was asked to do. So from the limited perspective of what was the case or controversy before Judge Chang, it was extinguished at the time we agreed to vacate all the orders under review. I have only a moment left, so I want to talk about one other thing. Judge Wood, I believe you asked, why is it that Chiarelli is trying to fix her standing at this late stage? That's an excellent question. In our opening brief on page 44 in a footnote, we noted that under this court's decision in Pollock, I don't have the full name here, and other authorities, that a plaintiff must establish standing at the time the suit is filed and cannot establish or manufacture standing afterwards. So Judge Chang's response to that is that she isn't really trying to establish it afterwards. She's trying to say that all along, you know, as a matter of Washington law, she's always had it. Yes, and I think what we do then is when you – I recognize that was the judge's analysis, but what it runs head straight into from our point of view is what was – there was already an adjudication on this issue in the bankruptcy court that it was ineffective, and that judgment has since become final. So it's for – just to go to a state court and say, no, no, no, your view of the evidence, Judge Castling, was incorrect. Here's another order that says – that extends beyond the bankruptcy. Does it mean as the custodian of the minor child, you know, she has other rights or responsibilities on behalf of the child? You know, there – is this really purely a bankruptcy-driven assignment, or is there something else to it? There's certainly something else to it because, as we noted and we discussed in our opening brief, entirely left not discussed this morning is this issue that the judgment, the original Tedra judgment created a statutory trust, which is a creature of Washington law. Right, right, right. And that was the bucket, if you will, that any monies recovered would flow into to be administered for the benefit of the minor. Are these monies, as Judge Rovner was asking, under the control of the Washington State Court at this moment, or are they – where are they? Well, there is – Mr. Taylor is a discharged debtor. All his assets were transferred pursuant to his confirmed plan of reorganization. There are – there is no pot of money somewhere that we're talking about. In fact, our position is Mr. Taylor has no assets to pay any judgment. So – all right, well, I think maybe we'll leave it at that. Why are you here? Why are you here? We will leave it at that, and thank you for your argument. Thank you, Your Honors. Thanks to opposing counsel as well. We'll take the case under advisement.